## SCOTT v. WARD

(No. 1923; February 11, 1936; 54 Pac. (2d) 805)

For the plaintiff and appellant, the cause was submitted on the brief of *William L. Simpson,* of Jackson, and *Milward L. Simpson,* of Cody.

244

For the defendant and respondent, the cause was submitted on the brief of *P. W. Spaulding*, of Evanston.

RINER, Justice.

This case is here through direct appeal proceedings taken concerning a judgment of the District Court of Teton County rendered January 28, 1935, and filed February 1, 1935, that the plaintiff take nothing by his action. The cause was tried solely upon the plaintiff's

amended petition filed October 2, 1933, the answer thereto of the defendant filed January 5, 1934, and a stipulation of the parties relative to these pleadings and submitting the cause for decision, filed November 20, 1934.

The action appears to be one regarded by appellant somewhat in the nature of an election contest, though the plaintiff, who was a candidate for the office of County Treasurer of Teton County against the defendant at the general election held November 8, 1932, does not claim the office, conceding as he does that the defendant received a majority of the votes cast, that a certificate of election was issued to him and that he took over the office.

The principal claim of the plaintiff's pleading is that the defendant, during his campaign for election, "circulated, uttered and published" a card to numerous voters of the county aforesaid, on which card he stated: "If elected I shall conduct my office efficiently and with fairness to all. I shall take a voluntary cut of ten per cent in salary, and will not cause the County any expense for deputies." It is alleged that this was done with the intent to corruptly influence the votes of the electors in defendant's favor. The defendant's answer admits that he caused to be printed a card of the nature above described, but denies that he published, uttered or circulated such cards with the intent "to offer said voters or electors or any of them a bribe to vote for said defendant or for the purpose of influencing or corrupting the vote of such electors or any of them by means of a promise or a reward or in any manner at all." The answer also denies that these cards were circulated to more than eighty voters, and further alleges that the County Commissioners of said County, during the summer of 1932, had requested all the then county officers to accept a reduction of ten per cent in their respective salaries, and that this

action on their part was common knowledge in said County.

We are asked by appellant to rule that defendant by his circulation of these cards thereby disqualified himself from holding the office of County Treasurer. Our attention is directed to many decisions from other jurisdictions dealing with pre-election promises of candidates for office of the nature herein involved, among them being State v. Elting, 29 Kan. 397, wherein, after citing numerous pertinent cases, Justice Brewer very forcibly said:

"In the closing and degenerate days of Rome's august empire, preceding its immediate downfall, the imperial purple was sold at public auction to the highest bidder. Equally base and equally significant of present decay and impending downfall would be the toleration of the private purchase of electoral votes. That which is wrong when done directly, is equally wrong when done indirectly. Salaries are paid by taxation, and when a candidate offers to take less than the stated salary, he offers to reduce *pro tanto* the amount of taxes which each individual must pay. If the candidate went to each elector and offered to pay one dollar of his taxes, that clearly would be direct bribery; and when he offers to take such a salary as will reduce the tax upon each tax-payer one dollar, he is indirectly making the same offer of pecuniary gain to the voter; so that those cases rest upon the simple proposition that the election of a candidate for office cannot be secured by personal bribery offered directly or indirectly to the voter.

\* \* \* \* \* \* \*

"A further question may arise when the offer of the candidate carries with it no pecuniary benefit to the voter. As, for instance, should a candidate for a county office offer to give, if elected, a portion of his salary for the erection of a public fountain; or if a candidate for a state office should offer if elected to endow a chair in some college—here it may be said that the voter is in no way influenced by considerations of personal gain. He receives no money in hand, his taxes will not

be reduced, and he may in no manner be pecuniarily benefited by the donation. This presents a case going still beyond those which have been decided, and yet very probably the same decision should control such a case, and for this reason: wrong considerations are thrown into the scale to influence the vote of the elector. The theory of popular government is that the most worthy should hold the offices. Personal fitness— and in that is included moral character, intellectual ability, social standing, habits of life, and political convictions— is the single test which the law will recognize. That which throws other considerations into the scale, and to that extent tends to weaken the power of personal fitness, should not be tolerated. It tends to turn away the thought of the voter from the one question which should be paramount in his mind when he deposits his ballot. It is, in spirit at least, bribery, more insidious, and therefore more dangerous, than the grosser form of directly offering money to the voter."

The case of Prentiss v. Dittmer, 93 Ohio State 314, 112 N. E. 1021, L. R. A. 1917B, 191, is also cited, wherein it was held that an offer of a candidate for judge made for the purpose of effecting his election to office, that in the event of his election he would accept for his judicial services only a portion of the salary legally due and payable, was against public policy and invalidated his election under the law of Ohio. See also Fields v. Nicholson, 197 Ind. 161, 150 N. E. 53; Sections 20 and 21 of Article VI of the Wyoming Constitution; Section 36-916 R. S. W. 1931.

However, it is unnecessary for us to decide the matter. Respondent has pointed out that the election involved was the general election held as noted above and that the term of office of the County Treasurer at that election selected commenced the first Monday of January, 1933, and ended the first Monday of January, 1935, over a year ago. Appellant states that he asks no relief except that the "office of the defendant be

annulled and declared void"; that appellant is not seeking to be inducted into the office in case of his success in this action; and that he is not "asking for any salary or emolument of office." Entirely aside from the question whether the plaintiff has instituted his action in proper form, under the circumstances presented, the case before us is moot, and we may not assume to decide it. Scott v. Columbia Savings & Loan Ass'n., 48 Wyo. 401, 49 Pac. (2d) 488.

In State ex rel. Maloney v. Condon, 189 U. S. 64, 23 Sup. Ct. 579, 47 L. Ed. 709, it was held that a writ of error to review a judgment of a state court in an action for usurpation of public office on the relation of persons superseded therein by an alleged unconstitutional legislative act, would be dismissed where the terms of office of all the parties to the suit had expired. The court quoting from a previous decision (Mills v. Green, 159 U. S. 651, 16 Sup. Ct. 133, 40 L. Ed. 293) said:

" 'The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal.' "

In State ex rel. Taylor v. Cummings, 27 Wash. 316, 67 Pac. 565, the court disposed of the case by the use of this language:

"This is a contest between the relator and respondent over an election, involving the right to the office

of road supervisor in road district No. 19 of King county, state of Washington, for the term of one year, to commence on the first Tuesday of January, 1901. Inasmuch as the term of office has expired, and there is no subject-matter upon which the judgment of this court can operate, this cause will be dismissed, under the rule announced in State v. Prosser, 16 Wash. 608, 48 Pac. 262; State v. Wickersham, 16 Wash. 161, 47 Pac. 421; and Hice v. Orr, 16 Wash. 163, 47 Pac. 424."

See as of similar import: Young v. Olsen, 115 N. W. (Iowa) 1020; Rollins v. League for Honest Elections, 46 Colo. 47, 102 Pac. 744; Christopher v. Crovatt, 147 Ga. 632, 95 S. E. 233; McCarter v. Lavery, 101 Neb. 748, 164 N. W. 1054; Commonwealth ex rel. Finn v. Floyd, 274 Pa. 172, 117 Atl. 778; State v. Jones, 81 W. Va. 182, 94 S. E. 120; State ex rel. Mirabal v. Greer, 37 N. M. 292, 21 Pac. (2d) 819; Hudson v. Moore, 169 Okla. 12, 35 Pac. (2d) 886; Pafhausen v. State ex rel. Loposer, 94 Miss. 103, 47 So. 897; Hamer v. Commonwealth, 107 Va. 636, 59 S. E. 400; Lindsey v. Kerr, 97 N. W. (Iowa) 1000.

There is an additional reason why the action of this court indicated below should be taken. The abstract of the record submitted on behalf of appellant quite fails in several important particulars to comply with our Rule 37, viz.,—a failure to show accurately the contents of the pleadings, the judgment rendered, notice of appeal therefrom and service of the notice of appeal. Simpson v. Occidental Building & Loan Ass'n., 45 Wyo. 425, 19 Pac. (2d) 958; Fryer v. Campbell, 46 Wyo. 491, 28 Pac. (2d) 475.

The case must be dismissed, and it is so ordered.

*Dismissed.*

KIMBALL, Ch. J., and BLUME, J., concur.